The case this morning is Jackson v. Department of Veterans Administration. Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Francis Jackson. Mr. Jackson is an attorney who appealed an attorney fee decision concerning his eligibility or entitlement to charge a fee, based upon his representation in a matter following representation at the United States Court of Appeals for Veterans Claims. His representation at the court involved a matter concerning increased rating for an existing service-connected disability. Below, he developed evidence for a secondary condition, which was granted, and then additional evidence was developed, and the VA granted a total rating based upon unemployability. The VA issued an eligibility decision determining that Mr. Jackson was not entitled to a fee. Under the procedures in place, Mr. Jackson is required to appeal just as though he were a veteran, and appeals that eligibility determination to the board for a decision. The board's decision was that he was not entitled, and that decision was affirmed by the court below. Now, did he receive no fee as a result of this, or a reduced fee? He received no fee. No fee at all. That's correct. For the fees that arose out of the award of past due benefits for a total rating based on unemployability. Right, but from the original representation on, was there compensation for the benefits? I mean, there were a variety of steps along here. As I read the record, Your Honor, there were no additional direct benefits for a scheduler increase for the service-connected condition that was at issue in the board decision that was the trigger, if you will, for the representational agreement under 5904. And then when it went back on appeal, or excuse me, back to the board following a successful appeal at the court, there was an award for secondary condition. And the record does not disclose whether or not there was or was not an award of attorney fees for that secondary award. How do you pass the fact that the board found no evidence of unemployability, a necessary condition for TDIU? Because the issue of TDIU was not before the board at that time, and the issue here is not entitlement to an earlier effective date for the award of TDIU. The issue here is how to interpret 5904C, the words in the case, whether or not the words in the case cover representation beyond the specific issues. The specific issues, the board is correct, did not involve TDIU, and could not have involved TDIU at that time because he didn't meet the qualifying requirements. He met the qualifying requirements as a result of his continuing representation. To accept the interpretation relied on below and relied on by the board, you would limit the right to charge a fee based upon the narrowness of the specific issues. Issues are not the question under 5904. The question under 5904 is what was the case about. The case in this case was about the right to additional compensation. But we've held repeatedly that a case means all issues raised by the evidence. That's correct, Your Honor. Therefore, wasn't TDIU raised by the evidence before the board? The board ruled there was no evidence of unemployability, and doesn't that close the door for us? No, Your Honor. What am I missing? Unemployability was not before the board in the original decision. No, it was not. And thus, appropriate for them to consider. Your Honor, it is confusing, as the board did, the question of entitlement to TDIU as an issue before the board as part of its adverse decision, and the right to charge a fee for work subsequently done that developed the right to IU. The key here is the language of 5904C. We are not dealing with the merit question of his entitlement to an earlier effective date for IU. If this were a question of earlier effective date on behalf of the veteran, your point would be well taken. This is in the context, however, of 5904C. We are dealing with the statutory requirements or eligibility requirements for an attorney to charge a fee. In this court's decision in Carpenter, this court found that a case involving TDIU— I think he just admitted that unemployability was not before the board. It's not before the board, nor fees, right? Absolutely not, Your Honor. The issue does not have to be—the specific issue of unemployability does not have to be before the board. Are you contending that our holding in the Carpenter case is wrong when we define the case as encompassing all potential claims raised by the evidence? No, Your Honor. But that was not the issue. The issue in Carpenter was the veteran, represented by myself, had a successful representation in getting an award of TDIU. That TDIU issue then was completely resolved. He went back on a revision, and the court found that that request for revision was part of the same case because it dealt with the same issues. The holding in Carpenter does not turn on the fact that the issues of TDIU were before the board. The case before the board was about the right to a total rating based on unemployability. What rule would you have us adopt in interpreting 5904? That the appropriate rule is that the question is about the benefits sought. The benefits sought here by Mr. Eesler was the right to additional compensation. But that's the benefits sought by every veteran in every case. That's correct, Your Honor, and the only question here is the trigger for the right to charge a fee. What you're doing and what the board did and what the court affirmed the board doing was to prevent the veteran from having the right to continue to have his representation under the fee agreement that was generated under 5904. Mr. Carpenter, let's look at this from the other end of the spectrum, so to speak. I'm curious, because so frequently the veterans' cases involve a sequence over sometimes a very long period of time of a variety of different claims, some related, some quite distinct. Where would you say the outer limit is for a case as you conceive that term as it's used in the statute? That is to say, if the veteran started in 1993, was represented at that point, but continued to make claims over the next 10 years, some related, some not related to the original claim, does that all become part of the same case as to which there was a representation agreement? Or what are the limits on that proposition? Well, I suppose the limits would have to be relatedness to the question that was before the board that triggered the right to representation in the first instance. That issue in this case was the right to increase compensation. Yes, but there's always going to be, as Judge Little said, that's what the veteran is invariably seeking is either compensation for a new disability or increased compensation for a previously found disability. And that accurately frames the question here. Why would Congress intend there to be a limit on the right to charge a fee? Why would Congress say you can represent on one aspect of increase the specific scheduler requirement, but you can't represent and charge a fee for a secondary consideration or for TDIU? That is simply an absurd interpretation. The intention of Congress, as is articulated in the Carpenter case, was clearly to expand the opportunity for veterans to have representation. Well, aren't we really talking about the scope of the agreement as opposed to the scope of the entitlement to enter into agreements? Well, as I read this Court's case law in Stanley and in Carpenter, which I believe are the two cases that control the outcome of this case, this Court has interpreted the phrase the case to talk about the matter that was first decided. And the matter that was first decided in this case was the right to additional compensation. Well, again, going back to my example of 10 years of claims that, suppose there are four different disabilities, would they all be within the same place? Absolutely, Your Honor. And that was precisely the situation in Carpenter. In Carpenter, they had unlawfully taken away his TDIU benefits some 20 years earlier. Eventually, he got representation, got before the Court, got a successful representation before the Court, got it sent back and got his TDIU reinstated prospectively. He then went back more than 10, 15, 20 years to get a request for revision on the unlawfulness of their having taken it away. That was all part of the same case. Well, it sounds like you're saying same case means same veteran. Absolutely. Okay, I mean, any claim by a veteran, a single veteran, regardless of how unrelated to a previous claim, would be part of the same case, as I understand your answer to my hypothetical. Well, no, let's take an example that the veteran had a claim before the Court on service connection for a head injury. Right. And then back below, he wants to develop a claim for service connection for a back condition. Right, that was my hypothetical. That has no relationship whatsoever to the head injury. Right. If they're totally unrelated, then that can't be the same case because he was seeking compensation for the disability flowing from the head as opposed to any disability flowing from the back injury. So the difference between one case and another case has to do with the nature of the disability claim? The nature of the benefit sought. What was he trying to obtain? Was he trying to obtain service connection for a specific condition? Was he trying to obtain service connection or, excuse me, increased compensation? And I believe, Your Honor, that you're right, that when you're dealing with increased compensation, as Judge Lynn points out, then, frankly, there are no limits because anything that would result in increased compensation should be part of the scope of that case because that was the case, that's what he was denied in that first final decision by the Board. And that's the triggering event. Oh, I'm sorry, I see that I'm into my rebuttal time. Reserve the rest. Thank you. Ms. Wieman. May it please the Court. This appeal should be dismissed for lack of jurisdiction because the decision below involves the application of law to the facts of the case. If, however, the Court finds it does possess jurisdiction, it should affirm the decision below because the Veterans Court properly concluded that there was no first final decision in the case regarding Mr. Eesler's claim for TDIU when that decision was made. The statutory predicate for attorney fees, therefore, was not triggered. Moreover, the fee agreements between Mr. Eesler and Mr. Jackson did not extend to TDIU and that is another reason why the decision below should be affirmed. What problem do you have with the interpretation of 5904 that Mr. Carpenter would have us adopt? In terms of, if Your Honor is talking about the jurisdictional issue that we have, we do not believe... No, the interpretation of 5904 and what a case means in terms of the recovery sought. This Court has reiterated numerous times what case means for the former version of 5904C1 and as Your Honor has pointed out, that definition is all potential claims raised by the evidence that was before the Board. In this particular, in the facts of this case, the evidence before the Board when it issued its July 2000 decision was that Mr. Eesler was working and he had sought service connection for cervical spine disorder and an increased rating for low back disorder. There was no evidence at that time that he was not working. To the contrary, as the record shows, Mr. Eesler at the time was employed. He actually was employed up until November of 2000, which is in the RO's rating decision granting in TDIU. So the issue we have with the interpretation Mr. Jackson urges of the term case, it is far too broad. It is basically the interpretation that is urged by Mr. Jackson basically requires the Veterans Administration to read in a claim for TDIU every time a veteran seeks benefits. Do you know whether Mr. Jackson received any attorney fee at all for his work in this case? I am not certain of that, Your Honor. The record is not clear on that. However, the fact is that Mr. Eesler got all the benefits that were due him. At the stage at which we are, we are trying to ensure that the statute is applied appropriately so that Mr. Eesler gets all these benefits. The bottom line is that Mr. Jackson was not entitled to a fee for the representation for TDIU. This case is blown out or it should be... TDIU is a funny animal because it is in a sense a measure of damages, so to speak. But in the parlance, we call it a claim for TDIU. But if this were just an ordinary case involving whether the rating should be increased or not or whether X amount of damages ought to be associated with a particular cause of action, there's no doubt that the cause of action would define the case and the damages would not... I mean, increased damages were sought later. That would all be part of the same case, right? I mean, you wouldn't talk about an increase in damages as being a different case. Why is that different for TDIU? Why is TDIU not properly viewed as simply a measure of the appropriate degree of benefits to be accorded for the particular disability that is the claim? This court has defined the case as being related to the evidence that has been presented. TDIU is separate from the underlying injury disability because it requires an additional showing by the veteran, specifically that the veteran is not able to follow substantially gainful employment. So that is what makes it separate. One can conceive of a situation in which a veteran could get a 100% disability rating. They could be a veteran who is unfortunately confined to a wheelchair for some sort of a leg injury. However, that veteran is able to follow gainful employment as an attorney. In that particular instance, the veteran would be 100% disabled but would not be eligible for TDIU. And so TDIU is separate from the underlying injury disability because of the additional showing that they cannot follow substantially gainful employment. And in fact, I believe this very case is answered by the court's holding in Stanley. A very similar factual situation was presented. The attorney in that case sought benefits under very similar circumstances where the issue of TDIU came up after the board had issued its first final decision. And this court very plainly stated that the attorney in that case was not entitled to fees for the TDIU claim because he could not conceive of a situation in which the TDIU claim which arose after the board's decision could possibly be part of the case. So the defining contours of a veteran's case have to do with, as this court defined under Stanley, the evidence that has been presented. Well, what if you have a case in which at the beginning of the, when the claim is first processed, the veteran's level of disability is such that it would yield a disability rating of 30%. But in the course of the litigation of the claim, the veteran's condition gets worse and worse and you ultimately determine that it's an 80% rating is appropriate. Are you saying that because at the outset of the claim the only amount at issue was the 20% that the attorney could not recover based on the larger rating that later evolved out of the case? No, Your Honor. It would certainly depend upon, for issues of TDIU, it would depend on… Well, I'm not talking about TDIU. I'm talking about purely a scheduler rating. But a change over time that wasn't in any way reflected by the evidence at the time of the initiation of the representation or the signing of the agreement. If, as Your Honor suggests, the claim in the initial rating stage was developed such that by the time it reached the board it was at a higher rating, the first five decisions… Well, what happened was the veteran got worse so that by the time ultimately that the case was decided there was a much higher rating. Would the attorney be entitled to fees predicated on the change in circumstances in the course of representation? I believe so, yes, Your Honor, because in that particular instance the first final decision by the board would encapsulate that underlying disability. Well, the disability but not the rating. In other words, the rating gets higher. The rating is, as this Court explained in Carpenter, a veteran's claim for benefits has essentially five essential elements, which obviously have to do with veteran status, having a current disability, as well as the rating of that disability. Let me go back to my hypotheticals. I want to make sure I understand exactly what you're saying here. You're saying that, if I understand it, correct me if I'm wrong, you're saying that if circumstances change so that the veteran goes from 20 percent, let's say up to 100 percent scheduler, then the amount collected by the attorney is properly viewed in light of the 100 percent that's ultimately collected, right? That initial agreement, even though the veteran was not disabled at 100 percent at the time of the agreement, the fact that the evidence ultimately showed in the course of the representation 100 percent, then the attorney recovers based on the 100 percent, correct? Correct, if that was part of the Board's first final decision, Your Honor. That's the trigger for purposes of attorney fees. Well, this goes back and forth between the Board and the IRO for years, as these things sometimes do. The 100 percent doesn't emerge until halfway through the process, long after the Board first sees the case, but long before the final disposition of the case. 100 percent is the amount that is the basis? Yes. Okay, but why if, in the course of that period, what happens is it doesn't turn out that it's 100 percent scheduler, but rather it's TDIU. Why is it different under those circumstances? Because TDIU requires additional evidence of unemployment. Well, you needed additional evidence to show that he went from 20 percent to 100 percent because he was getting worse. But this Court has defined the essential elements of a disability rating as being different from a claim for TDIU, and the five essential elements, as I was starting to explain, include the rating. So that is an essential part of the veteran's case is the rating, and so fluctuations in that would be part of that attorney fee agreement. However, TDIU is separate. A veteran can have their disability rating fluctuate, as happened in Mr. Carpenter's case. He went from 100 percent disabled down to 60 percent, and I believe was trying to get back up to 100 percent. The TDIU was separate, and that requires additional evidence of unemployability. To my understanding, a veteran is seeking to have TDIU in addition to 100 percent disability rating because that is extra assurance if their disability rating fluctuates, they will still be collecting the maximum amount of benefits under TDIU and not necessarily predicated upon their actual disability rating. I'd like to also address a few of the things that Mr. Carpenter touched on previously. The real trigger here under 5904C1, the former version, is that there is a decision which is adverse to the veteran on the merits, and in this particular case, the Board never had an opportunity to tell Mr. Eesler, you are not entitled to TDIU because it was never presented with any evidence of unemployability, and under this Court's holding in Roberson, it wasn't obligated to infer a claim for TDIU because at the time the record reflected that Mr. Eesler was employed. So the trigger, again, is a decision adverse to the veteran. Here there was no such adverse decision, nor can one be implied or deemed to have been adverse because, again, there was no evidence of unemployability. In terms of the aspect of relatedness and the boundaries regarding a case, in this particular case the relatedness is rather important because the entitlement to TDIU was also predicated on the fact that after a joint remand back to the RO, the claim for depression was then developed. At the time that, again, Mr. Eesler was seeking benefits before the Board, the only two issues were cervical spine and low back. There was no mention of depression. It was certainly not at all an issue that had not been raised. And so in terms of relatedness, the TDIU benefit was not at all related to the cervical spine. It is sort of tertiary related or tangentially related to the low back because the depression was secondary to the low back. But, again, it was a combined rating of a new disability that arose after the remand, which allowed Mr. Eesler to be within the realm to be considered for TDIU. And, again, the Court's decision in Stanley, I think, makes very plain that in the facts of this particular case, there is no way in which the former version of the statute had been triggered to entitle Mr. Jackson to collect fees. Thank you, Ms. Freeman. Thank you. Mr. Carpenter, you have about three and a half minutes remaining. Thank you very much, Your Honor. How do you reconcile this with Stanley? I don't think there's anything to reconcile with Stanley. Stanley involved a situation in which the disposition of TDIU had already been resolved. The disposition of TDIU was not resolved in this case until after the fee agreement was in place and after the representation was ongoing. Mr. Stanley's representation involved the right to charge a fee after the reopening, which the Court said he could, and the right to charge a fee as to TDIU, which had already been granted. They said no because that was not part of an issue that had been subject to a Board's decision. That's fundamentally different than what happened here. The case here was about Mr. Eesler's right to additional compensation for his service-connected disability. He eventually got additional compensation in two different ways. First, by establishing that he had an additional disability under 38 CFR 3.310A for the depression, and then those two conditions combined triggered the requirements for a total rating based upon unemployability. That's part of the same case. They all flow from the same matter that was presented. The question is not what did the Board decide. In the facts that were presented in Stanley, that was pertinent. TDIU was raised after remand just like here in Stanley. After remand on a matter that had not been subject to a final decision. If TDIU had been allowed after the reopening, that would have been an entirely different fact set. But the service connection must have been related to the TDIU just like here again. That's correct, Your Honor, but all that Mr. Stanley was entitled to charge a fee for in that case were any past due benefits that flowed from the reopened case. The TDIU award meant, quite frankly, that the likelihood of there being any past due benefits was over because he had been awarded the maximum benefit available. That's not the facts in this case. Mr. Eesler was receiving substantially less than a total rating for the rating on his back condition. As a result of the successful efforts of his attorney under the fee agreement that he entered into after the first final decision. And let's get clear, what the government represented as adverse decision is not in the statute. The word adverse decision does not appear in 5904. What appears in 5904 is a first final decision. Was there a first final decision on the rating to be assigned Mr. Eesler's service-connected disability? And the answer is yes. After that, there were additional issues that were developed and resulted in an award of past due benefits. That's the clear congressional intent of 5904. The suggestion that this interpretation is overly broad is simply absurd. It hurts no one for this to be overly broad. Mr. Eesler is not complaining about a fee being charged by Mr. Jackson. The only alleged interested party is the Department of Veterans Affairs. Well, who is the department? Do I misapprehend how this works? I mean, this isn't money that comes from the government. This isn't being held in escrow, right? I mean, this is just money. The question is, does Mr. Eesler or Mr. Jackson get it? That's correct. It's not like the normal EJA or some other fee-shifting arrangement. No. This is fees that are payable out of the award of past due benefits. Right. So Mr. Eesler is, I mean, he may not be complaining, but he is legally injured if, in fact, he gets less money, right? I mean, that may be a harsh way to put it. That's the government's perspective. If you win this case, Mr. Eesler gets less money than he would if you lose the case, right? That's correct, Your Honor. But my point was is that Mr. Eesler has not joined this case. He was given an opportunity below to join the case. He declined and said, I have no problem with my attorney getting paid for getting me the past due benefits that was awarded by the VA. It is the VA who has decided that this is wrong, and the board decided it was wrong, and the court decided it was wrong, based upon a fundamental misinterpretation of 59046. This is a bizarre situation because it does inherently put the attorney into a direct conflict situation with the client. I mean, I suppose it wouldn't be impossible. It's unrealistic, I understand, but it wouldn't be impossible to solve this problem by saying to Mr. Jackson, to Mr. Eesler, if Mr. Eesler really wants Mr. Jackson to have the money, he can simply cut him a check, right? I mean, if you lose this case and Mr. Eesler feels, well, Mr. Jackson should never have lost that case. I was really pulling for him the whole way. All he has to do is send him a nice Christmas present, a check for $7,000 or whatever it was, $7,000, right? Well, prior to the amendment of 38 U.S.C. 5905, that was a federal crime to do that. But it's not now. But it's not now. So, yes, I suppose it would be possible, but frankly, it would be in violation of the court's rules and Mr. – excuse me, of the VA's rules and regulations and potentially would cost him his opportunity to continue to be – I realize it's unrealistic, but it does put everyone, every player in this in a somewhat awkward position because you're really putting the attorney in a position that is adverse to the client. Having been there for more than two decades, Your Honor, I can assure you that that's the case. However, the point is, what was the intent of Congress? And I think the intent of Congress is clearly articulated in Carpenter, and there's nothing in adopting the broader interpretation that conflicts with that intent. Thank you very much, Your Honor. Thank you.